IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KHRIZMA KUHN, by and through her
guardians Gary and Renee Kuhn, GARY
KUHN, and RENEE KUHN,

        Plaintiffs,

    v.

MCNARY ESTATES HOMEOWNERS
ASSOCIATION, INC., and TERESA
GIROD,

        Defendants.

Case No. 6:16-cv-00042-AA
OPINION AND ORDER

---

AIKEN, Judge:

Defendant McNary Estates Homeowners Association, Inc., ("HOA") denied plaintiffs

Khrizma, Renee, and Gary Kuhn's request for an exception to the HOA's restrictive covenant

Page 1 - OPINION AND ORDER

prohibiting residents of McNary Estates from parking large vehicles in their driveways. Plaintiffs sought the exception because they asserted the ability to park a Class C RV in front of their home was necessary for Khrizma, who is disabled, to use and enjoy the dwelling. After the HOA denied plaintiffs' request, plaintiffs filed this action against the HOA and its president, defendant Teresa Girod,[1] asserting violations of the federal Fair Housing Amendments Act ("FHAA") and the Oregon Fair Housing Act, as well as a claim for negligence. Before the Court now are the parties' cross-motions for partial summary judgment. For the reasons set forth below, plaintiffs' motion is granted and defendants' motion is denied.

## BACKGROUND

The facts in this case are largely undisputed. Renee and Gary Kuhn are the parents of Khrizma Kuhn. Khrizma, who is thirty-four years old, has numerous disabilities. She has an IQ of thirty-six and functions at the level of two-and-a-half-year-old. Khrizma is essentially nonverbal, cannot bathe or groom herself, and uses a wheelchair outside the home. In 2005, Renee and Gary purchased a home in McNary Estates, the housing development overseen by the HOA. At that time, Khrizma lived in the home part-time. In 2010, Khrizma began living with her parents full-time.

Khrizma is unable to use a toilet without assistance and suffers from severe bladder and bowel incontinence. The incontinence increased in severity in 2014. In early 2015, after consultation with Khrizma's doctors, Renee and Gary decided to purchase a small motor home equipped with a toilet and shower. The motor home would ensure Khrizma always was close to a

---

[1] Plaintiffs initially sued two other defendants: Richard LeDoux and The Fountains at MacNary, McNary Estates, Phase 8 Homeowners Association, Inc. The claims against those defendants were settled and dismissed.

Page 2 - OPINION AND ORDER

toilet and would permit her parents to use the shower to clean her up in the case of accidents while away from home.

Residents of McNary Estates are subject to a set of covenants, conditions, and restrictions ("CCRs"). One of the CCRs prohibits McNary Estates residents from parking large vehicles, including motor homes, in front of their houses. Renee and Gary wanted to purchase a Class C RV, which would not fit in their garage. On April 6, 2015, they submitted an accommodation request to the HOA through Girod. The request was accompanied by letters from two of Khrizma's healthcare providers. Those letters documented Khrizma's bowel and mobility issues and explained why she needed to be in close proximity to a toilet even on short outings. In the request, Renee and Gary explained that Khrizma needed a vehicle in which she could lie down due to scoliosis. The request includes medical records documenting Khrizma's scoliosis.

At the HOA's May board meeting, the accommodation request was discussed and then tabled to permit the HOA's attorney, Kevin Harker, to discuss the situation with plaintiffs. Harker contacted plaintiffs and suggested two alternatives to plaintiffs' request: parking the motor home at an offsite facility or installing a chemical toilet in the back of a smaller van. Gary and Renee explained that neither alternative would meet Khrizma's needs. Because Gary uses the family car to go to work, parking the RV offsite would leave Renee with no way to get Khrizma to the motor home during work hours. Even when Gary was not at work, Khrizma would be at risk of having an accident in the car on the way to the RV. The van would be inferior to the RV for three reasons. Access to the toilet would be more difficult, as Khrizma would have to exit the vehicle and enter through the back of the van. The van would not have a shower to clean up in the event of accidents.

Page 3 - OPINION AND ORDER

And the van did not have sufficient space for Khrizma to lay down, as required to accommodate her scoliosis.

At the HOA's June board meeting, Harker advised the board that the HOA had no legal obligation to grant plaintiffs' request. The board voted to send the issue to mediation. But plaintiffs rejected that invitation. In an email, Renee wrote that

> Khrizma's bowels are NOT up for discussion in mediation. Mediation is for barking dogs and fence line issues. Our reasonable request for a medical variance to park a daily use, medical transport RV on our driveway is federally protected, as is the timeliness of your response, which has been severely delayed.

Harker Decl. Ex. 3.

The HOA responded in a June 10, 2015 letter. That letter states that the HOA was under no legal obligation to grant the accommodation because the accommodation "relates to transportation, not her ability to use or enjoy the home itself." Gary Kuhn Decl. Ex. 7 at 4. Harker also cited safety concerns, characterizing the risk that the RV would protrude onto the street and beyond plaintiffs' property line as "one of the primary reasons" the board asked to mediate. *Id.*

At plaintiffs' request, the Fair Housing Council of Oregon, a nonprofit, sent a letter to the HOA on June 23, 2015. That letter explained why the requested accommodation was reasonable and must be granted. It also included photos of an RV the same length as the one plaintiffs planned to purchase temporarily parked in plaintiffs' driveway. The photos show that the vehicle's wheels and the bottom of the chassis do not protrude beyond the property line.[2] Gary Kuhn Decl. Ex. 8 at 42-45. The photos and an email from an RV sales representative also show that the driveway measures 25 feet, 8.5 inches, while the RV is 24 feet, 10 inches long. Gary Kuhn Decl. Ex. 8 at 40-41. The Fair

---

[2] Defendants contend that because the driveway is at an angle, the top portion of the chassis may breach the property line. Whether that is true is not material to this Court's analysis.

Housing Council stated that if the HOA did not grant the accommodation, plaintiffs might be left with no choice but to sell their house, move, and perhaps sue for damages.

On June 30, 2015, the HOA responded with another letter. In the letter, Hacker stated the Board had determined it "does not have the legal authority to grant the request." Gary Kuhn Decl. Ex. 9 at 2. The letter goes on to stay that "[t]here is no disagreement that the Kuhn's daughter has a disability or that she qualifies for reasonable accommodation under the Fair Housing Act. Our point of disagreement is whether the storage of an RV is a reasonable accommodation required for Khrizma to use or enjoy the dwelling." *Id.* The letter also reiterated the HOA's safety concerns, noting that because the RV was nearly as long as the driveway, it would extend past the property line when parked unless there was virtually no gap between the garage door and the front end of the RV.

Renee and Gary purchased the RV and began parking it in their driveway. In a July 16, 2015 letter to the Fair Housing Council, Hacker raised stated that the vehicle was blocking visual sight for other drivers. In response to that concern, Renee emailed plaintiffs' next-door neighbor, Linda Strunk. Because the Kuhns' house was on a short, dead-end street, Strunk was the only homeowner whose view from her driveway would be obstructed by the RV. Renee explained to Strunk that they had ordered and would pay to install a parabolic mirror to address visibility issues entering and exiting the Strunks' driveway. Renee also indicated interest in discussing other solutions to the visibility problem. Strunk declined to accept the mirror, writing in an email to Renee that, "I have left your parabolic mirror on our porch. Please pick it up today as we do not wish to use it." Renee Kuhn Decl. Ex. 3 Sept. 13, 2016. In a declaration accompanying defendants' cross-motion for summary judgment, Strunk described a "near accident with another vehicle due to the inability to see traffic approaching" when the RV was parked in plaintiffs' driveway. Strunk Decl. ¶ 3.

On August 6, 2015, the HOA formally denied plaintiffs' accommodation request. The board minutes explain that in order to have a right to an accommodation, the person requesting the accommodation must have a disability, the request must be reasonable, and the request must be necessary for the use and enjoyment of the home. The minutes state that the first two criteria were met, but the third was not. The HOA notified plaintiffs of their decision on August 7, 2015. Plaintiffs sold their home and moved in September 2015. In a declaration accompanying plaintiffs' motion for summary judgment, Gary stated that he and Renee knew moving would be disruptive for Khrizma. Nonetheless, they decided to leave based on the four-month delay in rendering a decision, "growing hostility from our neighbors that was fostered by Ms. Girod," and the threat of litigation to enforce the CCRs. Gary Kuhn Decl. ¶ 8.

Plaintiffs moved for partial summary judgment regarding liability on their claims that defendants discriminated against them in the provision of housing services by failing to make a reasonable accommodation, in violation of 42 U.S.C. §§ 3604(f)(2) & (f)(3)(B) and Or. Rev. Stat. §§ 659.145(2)(c) & (2)(g). Defendants cross-moved for summary judgment on the same claims.

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing

Page 6 - OPINION AND ORDER

all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

The FHAA prohibits discrimination against any person "in the provision of services or facilities in connection with [a] dwelling" on the basis of disability. 42 U.S.C. § 3604(f)(2). The Act defines "discrimination" to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the person with a disability] equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B); *Budnuck v. Town of Carefree*, 518 F.3d 1109, 1119 (9th Cir. 2008). Oregon's fair housing law mirrors the federal law and the two statutes are interpreted identically. *Fishing Rock Owners' Ass'n v. Roberts*, 6 F. Supp. 3d 1132, 1138 n.1 (D. Or. 2014).

To establish a claim of discrimination on a theory of failure to reasonably accommodate, "a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (citations and quotation marks omitted). It is undisputed that Khrizma has a disability, that defendants knew about that disability, and that defendants denied the request for accommodation. It is similarly undisputed that defendants are bound to comply with the requirements of the FHAA. There are only two disputed questions with respect to the pending motions. First, was plaintiffs' requested accommodation necessary to permit Khrizma to use and enjoy of her home? And second, was plaintiffs' requested accommodation reasonable? Plaintiffs

bear the burden to show that the accommodation was necessary and "seems reasonable on its face." *Id.* at 1156. If plaintiffs make that showing, the burden shifts to defendants to show that the accommodation would cause undue hardship in the particular circumstances.[3] *Id.*

I.      *Necessity of Accommodation*

The first dispute is over whether an exception to the rule prohibiting parking an RV in front of the house is an accommodation that "may be necessary to afford [Khrizma] an equal opportunity to use and enjoy the dwelling." *Id.* at 1146. To prove necessity, plaintiffs must show that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* at 1155; *see also Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001) (stating that an accommodation is necessary under the FHAA if there is evidence that it "will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of his disability." (citation and quotation marks omitted)).

When the request for the accommodation was before the HOA board, defendants took the position that the accommodation failed to meet the necessity requirement because it was related to use and enjoyment of transportation, not housing. Defendants do not take that position now, likely because it is well-established that when a "handicapped person faces injury or pain by having to travel long distances from the house to the car . . . without a parking space close to the [home], the

---

[3] The *Giebeler* court left "up in the air" whether this precise wording correctly states the allocation of the burden in cases under the FHAA. *See Giebeler*, 343 F.3d at 1156 (9th Cir. 2003) (discussing differently-phrased tests from case law under the Rehabilitation Act and the Americans with Disabilities Act, and declining to decide whether the two tests are the same or slightly different). *Giebler* does, however, clearly establish that the plaintiff in a fair housing case bears the initial burden to show both necessity and reasonableness, and that once that initial burden is met, the burden shifts to the defendant to rebut plaintiffs' reasonableness evidence. Any difference between the two tests is immaterial in this case.

Page 8 - OPINION AND ORDER

handicapped individual's use and enjoyment of the dwelling is diminished." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997). Here, if Khrizma had a medical need to be transported in the RV, plaintiffs were effectively denied a parking space when defendants denied their request for a parking variance. Any reasonable factfinder looking at the summary judgment record would conclude that if the RV were parked offsite, Khrizma would face "injury or pain" in accessing the mode of transportation deemed best for her by her parents and her doctors.

Declarations submitted by Khrizma's medical providers amply demonstrate a nexus between Khrizma's disability and the need for an accommodation permitting the RV to be parked in front of the house.[4] Kaley Bourgeois, N.D., stated that

> [I]t is my medical opinion that, due to her medical condition, Ms. Kuhn requires a transport vehicle that allows her to be in close proximity to a toilet at all times. Additionally, the potential for accidents necessitates access to a shower. For these reasons, I believe that a motor home that is fully equipped with a separate toilet and shower is medically necessary to allow Ms. Kuhn to travel and have access to her community and medical providers. Given the risk of accidents and Ms. Kuhn's limited mobility, I believe that it is necessary that Ms. Kuhn's caregivers are able to park this vehicle at Ms. Kuhn's residence.

Bourgeois Decl. ¶ 3. Evelin R. Dacker, M.D., opined that a motor home equipped with a separate toilet and shower was necessary for the same reasons cited by Dr. Bourgeois. Dr. Dacker also explained that Khrizma "requires sufficient room to lay down in the vehicle" due to her scoliosis. Dacker Decl. ¶ 4.

---

[4] Defendants' motion to strike from the summary judgment record the letters that accompanied plaintiffs' request for accommodation is denied. Those letters, like the other materials accompanying the request, are admissible not to prove the truth of the matter asserted but to show what evidence the HOA had before it to connect Khrizma's disability to the requested accommodation. The declarations quoted in this opinion, to which defendants have mounted no evidentiary challenge, were submitted in support of plaintiffs' reply in support of their motion for summary judgment.

Page 9 - OPINION AND ORDER

In their motion for summary judgment, defendants focus their arguments on alternatives to the requested accommodation. They contend, as Harker did in his letters to plaintiffs, that the RV could be parked offsite or that a medical toilet could be installed in the back of a van. In addition, defendants raise for the first time in their summary judgment motion two new alternatives: that defendants could have expanded their garage to accommodate the RV, and that defendants could have purchased a smaller Class B RV. Defendants argue that the availability of these options renders the requested accommodation unnecessary.

To the extent that defendants argue Khrizma's needs could have been met with no change to the CCRs, plaintiffs provided a commonsense reason to reject defendants' proposed alternatives. A van equipped with a medical toilet would not provide easy access to the toilet, has no shower, and has insufficient room for Khrizma to lie down. Parking offsite would leave Renee and Khrizma would no transportation option when Gary is at work, and would risk accidents even when a car is available. Those reasons, which defendants have offered no evidence to contradict, more than satisfy any burden plaintiffs have to explain their rejection of defendants' non-accommodation alternatives. *Cf. Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 988767, *15-*16 (S.D. Fla. Mar. 13, 2004) (rejecting condominium's contention that it should be permitted to limit the size of a disabled resident's service animal to twenty pounds in the face of "commonsense" arguments, supported by evidence, that there would be disability-related benefits to a larger service animal).

The new proposed alternatives would themselves require accommodations: a Class B RV also would have to be parked in front of the house,[5] requiring a parking variance, and building an addition to the garage would have entailed an application process to get permission from the HOA. Defendants would have this Court hold that a requested accommodation is "necessary" under the FHAA only if there is no other accommodation that would impose a lighter burden on the housing provider. That is not the law. First, a plaintiff in an FHAA case need not prove that the requested accommodation is the best or only way to solve a disability-related problem; the plain text of the statute requires a housing provider to make any reasonable accommodation that "*may* be necessary" to permit use and enjoyment of the home. 42 U.S.C. § 3604(f)(3)(B) (emphasis added). Second, the United States Department of Housing and Urban Development and the United States Department of Justice have addressed, and rejected, defendants' argument:

> There may be instances where a provider believes that, while the accommodation requested by the individual is reasonable, there is an alternative accommodation that would be equally effective in meeting the individual's disability-related needs. In such a circumstance, the provider should discuss with the individual if she is willing to accept the alterative accommodation. However, providers should be aware that persons with disabilities typically have the most accurate knowledge about the functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if she believes it will not meet her needs and her preferred accommodation is reasonable.

Joint Statement of the Department of Housing and Urban Development and the Department of Justice on Reasonable Accommodation (May 17, 2004) ("Joint Guidance"), *in* 1 Housing Discrim.

---

[5] Although the CCRs would prohibit parking a Class B RV in front of the house, it is not clear from the summary judgment record whether a Class B RV would fit in the garage. If a Class B RV would fit in the garage, it is a "non-accommodation" alternative like the van and offsite parking alternatives. Plaintiffs have explained that a Class B RV, with its small combined toilet and shower, would not meet Khrizma's needs. That explanation is supported by the medial evidence.

Pr. Man. App'x 2C.  The Joint Guidance, though not binding on this Court, is entitled to persuasive

weight.  *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) ("The well-reasoned views of

the agencies implementing a statute constitute a body of experience and informed judgment to which

courts and litigants may property resort for guidance." (citations, quotation marks, and alterations

omitted).  As the U.S. District Court for the Southern District of Florida recently noted, it is a "basic

premise" of disability law that "while not every accommodation chosen by a disabled person is

'reasonable,' a [housing provider] is not permitted to survey the universe of possible

accommodations or modifications and determine for the individual what, in its estimation, is the best

or most 'reasonable' approach." *Alboniga v. Sch. Bd. of Broward Cnty. Fla.*, 87 F. Supp. 3d 1319,

1339-40 (S.D. Fla. 2015).  Third, as noted above, defendants raised the Class B RV and garage

modification options for the first time in their summary judgment motion, after denying plaintiffs'

request and after plaintiffs had sold their house and moved.  Under basic principles of fairness and

waiver, they are not now permitted to avoid liability by faulting plaintiffs for failing to come up with

those alternative accommodations.

        Considering the plain text of the statute, the Joint Guidance, and the principles of fairness

and waiver described above, I conclude defendants' identification of plausible alternative

accommodations is irrelevant to evaluating whether plaintiffs' requested accommodation was

necessary within the meaning of the statute.

        In arguing that plaintiffs' requested accommodation was not necessary, defendants rely

extensively on *Cimarron Foothills Cmty. Ass'n v. Kippen*, 79 P.3d 1214 (Az. Ct. App. 2003).  In that

case, the defendants operated an elder care facility out of their home.  *Id.* at 1216.  When the

homeowners' association sued them for violating the restrictive covenant prohibiting residents from

parking RVs in front of their houses, the defendants argued they were entitled to a reasonable accommodation exempting them from the requirement. *Id.* At trial, one of the defendants testified that building a garage to enclose the RV would have been a financial burden and that a garage that big would have been an "eyesore" that diminished that value of their property. *Id.* at 1218. The court held the requested accommodation, which it characterized as a request for an exemption from the rule requiring RVs to be kept in enclosed garages, was not necessary within the meaning of the Fair Housing Act. *Id.* at 1219.

I do not find the reasoning in *Cimarron* persuasive for a number of reasons, but there is no need to explain why in this case. *Cimarron* is distinguishable for the basic reason that the homeowners' association in that case did not raise their argument about building a garage for the first time in a summary judgment motion. To the extent plaintiffs here had any obligation to consider defendants' proposed alternatives, they were bound to consider only those alternatives suggested in the interactive process; they cannot be expected to have anticipated every *post hoc* rationalization defendants could generate to justify their denial of the accommodation.

Whether an accommodation is necessary is a question of fact. But here, there is no question of material fact that the van and offsite parking would not meet Khrizma's needs. With respect to the two alternative accommodations raised for the first time in the summary judgment motion, it is not plaintiffs' burden to show that they chose the best or least burdensome accommodation.

It is clear from the record that plaintiffs were not much interested in discussing defendants' proposed alternatives. But the FHAA does not require individuals requesting accommodation to be reasonable in discussing alternatives; it requires them to prove the requested accommodation may be necessary to permit use and enjoyment of the home. Plaintiffs met that requirement by

introducing medical evidence connecting Khrizma's disability to the use of a Class C RV that can be parked in close proximity to her home. Viewing the summary judgment record as a whole, I find no question of material fact remains regarding the necessity of plaintiffs' requested accommodation. Plaintiffs are entitled to summary judgment on the issue of necessity.

II.    *Reasonableness of Accommodation*

Even though the requested accommodation was necessary, defendants were only obligated to provide it if it was also reasonable. "Ordinarily, an accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Giebeler*, 343 F.3d at 1157 (citations and quotation marks omitted). Defendants contend that there remains a question of material fact whether the requested accommodation would make the street unsafe for other drivers.[6] They rely on a provision of the statute that expressly states that "a dwelling [need not] be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9). The Joint Guidance states that a direct threat determination "must rely on an individualized assessment

_____

[6] Plaintiffs argue that defendants conceded the requested accommodation was reasonable, citing the meeting minutes from the August 6, 2015 HOA board meeting. Those minutes state that "the first two criteria are met," referring to the requirement that an individual requesting an accommodation demonstrate that she has a disability and that the requested accommodation is reasonable. Gary Kuhn Decl. Ex. 13. That statement does not foreclose defendants from contesting reasonableness now for two reasons. First, plaintiffs have cited no precedent for treating meeting minutes as a binding judicial admission. Second, the record suggests that the meeting notes may reflect a layperson's misunderstanding of legal advice. A June 30, 2015 letter from the HOA's attorney states that "[t]here is no disagreement that the Kuhn's daughter has a disability or that she qualifies for reasonable accommodations under the Fair Housing Act." Gary Kuhn Decl. Ex. 9 at 2. In making the "first two criteria" statement, the HOA board may have conflated whether Khrizma is entitled to reasonable accommodations with whether the requested accommodation was reasonable.

Page 14 - OPINION AND ORDER

that is based on reliable objective evidence" and must consider "(1) the nature, duration, and severity of the risk of injury; (2) the probability that injury will actually occur; and (3) whether there are any reasonable accommodations that will eliminate the direct threat." Joint Guidance. It goes on to say that "[t]he housing provider must have reliable, objective evidence that a person with a disability poses a direct threat before excluding him from housing on that basis." *Id.*

Plaintiffs met their initial burden to show that the requested accommodation was reasonable on its face. They responded to defendants' safety concerns by documenting the length of the RV and their driveway and showing through photo evidence that the RV could be parked in the driveway without extending beyond the property line. They also specifically addressed concerns about visual sight lines by purchasing and offering to install a parabolic mirror. Finally, plaintiffs submitted uncontradicted evidence that their house was on a short, dead-end street with little traffic. The burden therefore shifts to defendants to show that the requested accommodation was not reasonable under the circumstances.

Defendants introduced a single piece of evidence that parking the RV in front of plaintiffs' home blocked sight lines and posed a safety threat: the declaration of plaintiffs' neighbor that she was in a near accident because the RV made her unable to see. That evidence likely would have been sufficient to get defendants to trial on the issue of reasonableness were it not for the evidence about the parabolic mirror. However, it appears a parabolic mirror would mitigate or eliminate the only documented safety risk in the record — the risk when the Strunks exit their driveway. It is defendants' burden to rebut that evidence, and they have not done so. Defendants offer no evidence regarding the severity of the risk posed or the probability that accidents will occur. The only direct, objective evidence of danger is Strunk's declaration, and she does not explain why she rejected

Page 15 - OPINION AND ORDER

installation of a mirror designed to address the precise risk that led to her near-accident. Defendants' argument that parabolic mirrors are themselves a safety concern due to sun glare is speculative and unsupported by any evidence in the record. Because defendants have not introduced evidence sufficient to create a question of material fact regarding reasonableness, plaintiffs are also entitled to summary judgment on that issue.

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (doc. 22) is GRANTED. Defendants' Cross-Motion for Summary Judgment (doc. 30) is DENIED. The parties' requests for oral argument are denied as unnecessary. Judgment is entered in favor of plaintiffs regarding liability on the federal- and state-law claims that defendants discriminated against plaintiffs by refusing to make a reasonable accommodation in the provision of services in connection with housing.

IT IS SO ORDERED.

Dated this _11th_ day of January 2017.

_____

Ann Aiken
United States District Judge